*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. D. FIELDS, Minor.

UNPUBLISHED
June 16, 2022

No. 358792
Wayne Circuit Court
Family Division
LC No. 2019-001276-NA

Before: BOONSTRA, P.J., and GADOLA and HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order removing her minor child, DDF, from her care. We affirm.

## I. FACTS

At the time DDF was born, respondent was subject to a case service plan in separate child protective proceedings regarding respondent's older child, NF. NF was removed from respondent's care two years earlier because of respondent's ongoing substance abuse. Since that time, respondent had failed to comply with the case service plan as required to regain custody of NF. Specifically, respondent repeatedly failed to participate in required drug testing and continued using substances; when she participated in drug testing she frequently tested positive for cocaine, fentanyl, and marijuana. Respondent continued to test positive for substances while pregnant with DDF, and admitted to police officers to drinking alcohol the week before DDF's birth.

Shortly after DDF's birth, petitioner, Department of Health and Human Services (DHHS), petitioned the trial court to remove DDF from respondent's care. In the petition, Child Protective Services investigator Dora Woods alleged that respondent was using illegal drugs and alcohol while pregnant with DDF and failing to comply with the case service plan established regarding her older child. At the preliminary hearing, Woods testified that it was contrary to DDF's welfare for DDF to remain in respondent's care because respondent was failing to comply with the case service plan and was continuing to use illegal substances. Woods testified that in an effort to investigate DDF's well-being, she had repeatedly called and texted respondent's phone and also had attempted to visit respondent's home, but respondent refused to respond. Woods testified that as a result of respondent's failure to cooperate with her efforts to investigate, Woods was unable to provide respondent reunification services regarding DDF or to assess DDF's health. In contrast

-1-

to Woods' testimony, respondent testified that she was making progress in her case service plan regarding NF, that she was abstaining from substance use, and that contrary to the police report she did not drink alcohol the week before DDF's birth.

At the conclusion of the preliminary hearing, the trial court's hearing referee found that it was clearly contrary to DDF's welfare to remain in respondent's care. The hearing referee found that evidence was presented that respondent had been using substances and alcohol while pregnant with DDF and contrary to the requirements of the case service plan in place regarding her older child, NF. At the conclusion of the preliminary hearing, the trial court entered an order authorizing the petition with respect to respondent, authorizing DDF's removal, and placing DDF in foster care. The trial court specifically found that it was contrary to the welfare of the child to remain in respondent's home and that reasonable efforts had been made to prevent removal of DDF from the home. Respondent now appeals.

## II. DISCUSSION

Respondent contends that the trial court erred by removing DDF from her care because there was insufficient evidence to support removal under the requirements of MCL 712A.13a(9) and MCR 3.965(C). Respondent also argues that petitioner failed to make reasonable efforts to prevent DDF's removal. We disagree.

We review for clear error a trial court's factual findings in child protective proceedings. MCR 2.613(C); *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). A finding of fact is clearly erroneous when the reviewing court has a definite and firm conviction that a mistake was made. *Id*. We review the trial court's application of statutes and court rules de novo. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

After a preliminary investigation into allegations of child abuse or neglect, the DHHS may petition the Family Division of the circuit court to take jurisdiction of a child when child abuse or neglect is suspected. *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). Once the trial court receives the petition, typically the trial court must hold a preliminary hearing to decide whether to authorize the filing of the petition and, if authorized, whether the child should "remain in the home, be returned home, or be placed in foster care pending trial." MCR 3.965(B)(12); see also *In re Benavides*, 334 Mich App at 167. Under MCL 712A.13a(9) and MCR 3.965(C)(2), the trial court may order placement of the child into foster care only if it finds all of the following:

> (9) The court may order placement of the child into foster care if the court finds all of the following conditions:
>
> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).
>
> (c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCL 712A.13a(9).][1]

In addition, under MCR 3.965(C)(3) and (4), if the trial court orders that the child be placed in foster care, the trial court must find that "it is contrary to the welfare of the child to remain at home," . . . and that "reasonable efforts to prevent the removal of the child have been made."[2] *In re Benavides*, 334 Mich App at 168 (quotation marks and citation omitted).

In this case, the trial court explicitly found in its order entered following the preliminary hearing that it was contrary to the welfare of DDF to remain in the home and that reasonable efforts were made to prevent the removal of DDF from the home, thereby complying with MCR 3.965(C)(3) and (4). With respect to the five requirements of MCL 712A.13a(9) and MCR 3.965(C)(2), the trial court found during the preliminary hearing that being in respondent's care presented an ongoing risk of harm to DDF because of respondent's continued illegal drug use, that continuing in respondent's home was contrary to DDF's welfare, that the only adequate arrangement at that point was removal of DDF from respondent's care and placement in appropriate foster care adequate to safeguard the child, and that under the circumstances petitioner had made reasonable efforts to prevent the need for DDF's removal from the home. The trial court thereby satisfied the requirements of MCL 712A.13a(9) and MCR 3.965(C)(2).

Respondent argues, however, that the trial court erred by removing DDF from her care because insufficient evidence was presented to support removal and that petitioner improperly relied upon hearsay evidence presented by Woods to prove respondent's prenatal substance use. Respondent's argument that the trial court erroneously relied on Woods's testimony to establish a factual predicate to remove DDF is unpersuasive because the trial court's findings at a preliminary hearing "may be made on the basis of hearsay evidence that possesses adequate indicia of trustworthiness." MCR 3.965(C)(3). Accordingly, the trial court could consider the testimony of Woods, which was based in part on information from respondent's drug-screen reports and a police report, to demonstrate that respondent abused substances while pregnant with DDF.

Moreover, there was ample evidence that remaining in respondent's home was contrary to DDF's welfare. The evidence suggested that respondent had been using illegal substances since at least two years earlier when NF was removed from her care. Although services were offered for two years, respondent nonetheless was using illegal substances and alcohol shortly before DDF was born, suggesting that she was unable or unwilling to end her substance use even though she had been offered services to help her do so. A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide proper care and custody for the child and that the child will be harmed if returned to the parent's home. *In re Kaczkowski*, 325

---

[1] MCR 3.965(C) is substantially the same as MCL 712A.13a(9).

[2] There are certain enumerated exceptions to the reasonable-efforts requirement, see MCL 712A.19a(2) and MCR 3.965(C)(4), none of which apply in this case.

Mich App 69, 77; 924 NW2d 1 (2018). The trial court therefore did not err in finding that respondent's substance abuse during her pregnancy and her failure to address her substance abuse as part of reunification efforts with NF demonstrated a substantial risk of harm to DDF. See *In re Benavides*, 334 Mich App at 169-170 (explaining that the failure to benefit from a court-ordered treatment plan supports removal of a child). Although respondent denied the allegations of substance abuse, we defer to the trial court's assessment of witness credibility. See MCR 2.613(C); *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020). We conclude that the trial court's factual findings were supported by the evidence presented. We also observe that the purpose of child protective proceedings is to protect the child. *In re Richardson*, 329 Mich App 232, 254; 961 NW2d 499 (2019). In this case, respondent's conduct demonstrated she was not prepared to place DDF's needs over her own even shortly before his birth.[3]

Respondent also contends that petitioner failed to make reasonable efforts to prevent DDF's removal. Respondent's failure to communicate with the child protective services investigator, however, renders respondent's argument unpersuasive. Investigator Woods testified that she tried numerous times to reach respondent by phone, by text, and by visiting her home in person, and attempted to contact respondent through police and through the hospital; she was never able to reach respondent and respondent did not respond to messages. Petitioner cannot offer respondent services aimed at preventing removal if respondent refuses contact by petitioner. The evidence suggests that respondent's refusal to cooperate with petitioner was intentional because respondent had been engaged in a case service plan for two years regarding her older child and therefore was aware of what efforts petitioner would expect her to make. As the trial court noted, petitioner previously provided respondent drug screens, drug counseling, and parenting classes in connection with the child protective proceedings relating to respondent's older child, but respondent failed to comply with the offered services. Although petitioner had a responsibility to make reasonable efforts to prevent removal of the child, this Court has explained in the context of reunification that parents have a commensurate responsibility to participate in the services offered. See *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502, 358503); slip op at 2. The trial court did not clearly err by authorizing DDF's removal from respondent's care.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Noah P. Hood

---

[3] We note that respondent's parental rights to DDF have not been terminated; rather, DDF was removed from respondent's home for his safety, and respondent now has the opportunity to demonstrate adherence to her case service plan to reunite with DDF.